## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**BILLY BUCKALEW, Individually and as**
**Personal Representative of the Heirs and**
**Beneficiaries of Jerry Buckalew, Deceased**                    **PLAINTIFF**

**v.**                                                    **CAUSE NO. 3:13CV189-LG-JCG**

**SCHNEIDER NATIONAL CARRIERS,**
**INC., and RHOAN HUDSON**                                      **DEFENDANTS**

### ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE EXPERT
### TESTIMONY AND MOTION FOR *DAUBERT* HEARING

**BEFORE THE COURT** are the Motion [122] to Exclude Expert Testimony

of Howard T. Katz, M.D., and the Motion [85] for *Daubert* Hearing filed by the

plaintiff, Billy Buckalew.  The defendants have filed a response in opposition to the

Motion to Exclude, and the plaintiff has filed a reply.  After reviewing the

submissions of the parties and the applicable law, the Court finds that the Motion

to Exclude and the Motion for *Daubert* Hearing should be denied.

### FACTS

On March 2, 2011, Harold Buckalew was driving a 1996 Buick Century in the

right-hand lane of Interstate 20, while traveling west.  Harold's brother, Jerry, was

riding in the front passenger seat of the Buick.  A tractor-trailer driven by Rhoan

Hudson on behalf of Schneider National Carriers was also traveling west on

Interstate 20, approaching the Buckalew vehicle from behind.  The tractor-trailer

and Buick were involved in a collision as Hudson attempted to pass Harold, but the

parties dispute which vehicle left its proper lane of travel and caused the accident.

Jerry Buckalew was hospitalized after the accident, and he died on October 21, 2011.  The parties dispute whether his death was caused by the accident or unrelated, preexisting conditions.

The plaintiff, Billy Buckalew, claims that Jerry's pre-existing illnesses and injuries were aggravated by the accident, resulting in Jerry's death.  The defendants have designated Howard T. Katz, M.D., as an expert witness.  Dr. Katz is "a licensed and practicing medical doctor, board certified in the fields of Physical Medicine and Rehabilitation, and in the subspecialty of Spinal Cord Injury Medicine."  (Defs.' Resp., Ex. D at 1, ECF No. 134-4).  Dr. Katz conducted a review of Jerry's post-accident medical records, and he opined:

> Based to [sic] a reasonable degree of medical certainty, Jerry Buckalew had aggravation of his chronic back pain when he was involved in the motor vehicle accident.  He was about to be very ill any way.  He had pre-existing severe peripheral vascular disease.  He had infectious organisms in his body.  He did not suffer any severe injuries from the motor vehicle accident.  Rather, treatment after March 2, 2011, was related to multiple pre-existing conditions including diabetes mellitus, peripheral vascular disease, coronary artery disease, obstructive sleep apnea, osteoporosis, tobacco abuse, community acquired pneumonia and gingivitis.

(Pl.'s Mot., Ex. A at 18, ECF No. 122-1).  The plaintiff asks the Court to exclude Dr. Katz's opinions.

## DISCUSSION

Rule 702 of the *Federal Rules of Evidence* establishes the following standards for determining whether expert testimony is admissible:

> (a) the expert's scientific, technical, or other specialized knowledge [must] help the trier of fact to understand the evidence or to

> determine a fact in issue;
> (b) the testimony [must be] based on sufficient facts or data;
> (c) the testimony [must be] the product of reliable principles and methods; and
> (d) the expert [must have] reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Thus, "expert testimony is admissible only if it is both relevant and reliable."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993).  In order to be reliable, an expert's opinions must be based on sufficient facts or data, as well as the product of reliable principles and methods.  Fed. R. Civ. P. 702(b), (c).

Reliability is determined by making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Id.* at 592-93.  The district court must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 609 U.S. at 596.  The proponent of expert testimony must prove that the testimony is reliable by a preponderance of the evidence.

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

The plaintiff claims that Dr. Katz is not qualified to provide testimony and opinions concerning Jerry's various medical conditions, because he does not specialize in those fields of medicine.  The plaintiff also argues that Dr. Katz merely provided unsupported conclusions, without any basis or reasoning.  According to the plaintiff, Dr. Katz also failed to explain his methodology in reaching his opinions, and Dr. Katz' review of Jerry's medical records is a mere "regurgitation" that does not qualify as expert opinion testimony.  The plaintiff makes specific objections to the following opinions:

- "Mr. Buckalew was admitted with a A1C of 7.6 showing that his diabetes was not well controlled."

- He developed a community-acquired pneumonia on March 3, 2011.  To a reasonable degree of medical probability, this was secondary to his severe dental disease."

- "Mr. Buckalew had severe peripheral vascular disease and was not well when he was admitted on March 2, 2011."

- "He had dental disease and it was felt that he was seeding his body with bacteria from his gingiva and underwent all of his teeth being extracted on May 6, 2011."

- "He was about to be very ill any way."

- "He had infectious organisms in his body.  He did not suffer any severe injuries from the motor vehicle accident.  Rather, treatment after March 2, 2011, was related to multiple pre-existing conditions including diabetes mellitus, peripheral vascular disease, coronary artery disease, obstructive sleep apnea, osteoporosis, tobacco abuse, community acquired pneumonia and gingivitis."

The plaintiff further asserts that Dr. Katz's opinions should be excluded pursuant

to the "eggshell plaintiff" doctrine, and he seeks a Daubert hearing regarding the issues raised in his Motion.  The Court finds that the record is sufficient to make a determination without the necessity of a *Daubert* hearing.

In an affidavit, Dr. Katz has provided a detailed description of his education, experience, and training.  He testifies:

> As a medical doctor, I am trained, educated and experienced in areas of infectious disease, internal medicine, pulmonary medicine and epidemiology.  As a medical doctor, I am qualified to diagnose and treat pneumonia.  Further, the co-morbidities of individuals with spinal cord injury include, but are not limited to, problems connected with oral hygiene, pulmonary infectious disease, especially pneumonia, and sepsis.  Thus, as a Board Certified Physiatrist and Spinal Cord Injury Medicine Specialist, I am qualified and recognized as an expert in these areas by the Board of Physical Medicine and Rehabilitation.

(Defs.' Resp., Ex. D at 2-3, ECF No. 134-4).  Dr. Katz cited numerous peer-reviewed articles supporting his opinions as well as his statements that, as a physiatrist, he is qualified to provide the opinions at issue.  (Defs.' Resp., Ex. C to D, ECF No. 134-4).

"A physician does not have to practice in, or be a specialist in, every area in which he offers an opinion, but he must demonstrate that he is 'sufficiently familiar with the standards' in that area by his 'knowledge, skill, experience, training, or education' to satisfy Rule 702."  *Bailey Lumber & Supply Co. v. Robinson*, 98 So. 3d 986, 992 (¶15) (Miss. 2012) (quoting *Troupe v. McAuley*, 955 So. 2d 848, 856 (Miss. 2007)).  The expert witness "must exercise the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id*.

Dr. Katz has demonstrated that he is qualified to provide expert opinions

regarding Jerry's numerous medical conditions through his education, training, and experience.  Since he is a physiatrist that specializes in physical medicine, rehabilitation, and spinal cord injury, he is certainly qualified to testify whether Jerry's death and the necessity for post-accident medical treatment were caused by the aggravation of spinal injuries suffered during the accident or other pre-existing conditions.  *See Bester v. Travis*, No. 4:11CV60-DPJ-FKB, 2013 WL 3243656 at *3 (S.D. Miss. June 26, 2013).

The Court further finds that Dr. Katz has adequately explained his methodology and the reasoning behind his opinions.  He has demonstrated that his opinions are supported by peer-reviewed literature and his review of Jerry's medical records, as well as his training, education, and experience.

Finally, Dr. Katz's opinions are not impermissible pursuant to the "eggshell plaintiff" doctrine.  The Mississippi Supreme Court has held, "One who injures another suffering from a pre-existing condition is liable for the entire damage when no apportionment can be made between the pre-existing condition and the damage caused by the defendant – thus the defendant must take his victim as he finds [him]." *Blake v. Clein*, 903 So. 2d 710, 730 (¶54) (Miss. 2005) (quoting *Brake v. Speed*, 605 So. 2d 28, 33 (Miss. 1992)).  Dr. Katz's testimony that apportionment can be made between Jerry's pre-existing conditions and the injury he suffered in the accident is, therefore, admissible.  The determination of whether an apportionment can actually be made must be submitted to a jury at trial.

As a result, the Court finds that the plaintiff's Motion to Exclude Dr. Katz

and the plaintiff's Motion for *Daubert* hearing should be denied.  The plaintiff will have the opportunity to address his concerns regarding Dr. Katz's testimony through cross-examination at trial.

### CONCLUSION

Since the defendants have demonstrated that Dr. Katz is qualified to give opinions concerning the cause of Jerry's medical treatment and death, as well as the relevance and reliability of those opinions, the plaintiffs' Motions are denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [122] to Exclude Expert Testimony of Howard T. Katz, M.D., and the Motion [85] for *Daubert* Hearing filed by the plaintiff, Billy Buckalew are **DENIED**.

**SO ORDERED AND ADJUDGED** this the 21st day of August, 2014.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE

-7-